**John K. LINCOLN, Petitioner,**

v.

**Franklin Y.K. SUNN, Respondent.**

**Civ. No. 82–0528.**

United States District Court,
D. Hawaii.

Aug. 18, 1987.

Eric A. Seitz, Honolulu, Hawaii, for petitioner.

Arthur E. Ross, Deputy Pros. Atty., Charles F. Marsland, Jr., Pros. Atty., Honolulu, Hawaii, for respondent.

## DECISION AND ORDER

SAMUEL P. KING, District Judge.

In 1978, Anthony Kekona and Patrick Hawkins went to a condominium on Maui where Paul Warford, David Blue, and Harriet Savage were staying. Kekona shot and killed Warford and Blue, and seriously wounded Savage.

Kekona and Hawkins were arrested shortly after the shootings. Kekona plead guilty to two counts of murder and one count of attempted murder. During sentencing, Kekona stated that he and Hawkins acted alone perpetrating the crimes, and that their original plan had been to rob, not kill, the victims.

After sentencing, Kekona changed his story and claimed that John Lincoln had hired him to kill the three victims. According to the prosecution, Lincoln reneged on the contract terms. He refused to pay Kekona $10,000 as agreed, failed to provide Kekona with a lawyer after Kekona was apprehended, and failed to kill adverse witnesses.

In late 1979, a grand jury indicted Lincoln on two counts of "murder for hire" and a third count of attempted murder.

Lincoln did not testify at his trial, which began in March, 1980. During the Government's closing rebuttal statement, the prosecutor made the following improper comments regarding Lincoln's decision not to testify:

> Now let's take a look at the sequence of events.... We know that on that date there was a phone call made from the Lincoln residence to the Kekona residence.... We also know, based upon what Kekona has testified, that it was Lincoln who called Kekona and told him that he had a job for Kekona.... Whether the defendant was already on Maui or not cannot be determined....
>
> ... [W]e really don't know what happened. *And there's only one person who can tell us.*
>
> ... Now in that telephone call, there are only two parties involved, the caller and the person receiving. Kekona, being the person receiving the call, told us what the call was about, *and there is only one other person who can testify* with regard to that call.
>
> ... It was established during the prosecution's case that although there is an airplane ticket in the name of J. Lincoln, police investigation ... cannot tie in the Defendant.... [T]o expect that ... people would be able to identify the person who used the ticket under the name of J. Lincoln in April of 1978 would be an impossible task. Again, *there is only one person who can tell you,* in addition to Kekona, whether he, in fact, did fly from Honolulu to Kaanapali. [Objection made and sustained.] ...
>
> ....
>
> Mr. Seitz has said, "Where's the motive? What was the payoff for Mr. Lincoln? Who hired him? Who paid him?" Mr. Kekona does not know ... He was never told.... And the Court and Mr. Seitz have told you the Defendant need not testify. I suggest, ladies and gentlemen of the jury, that these questions with regard to the motive, the payoff, who hired him, and who paid him *are*

*being asked of the wrong persons.* [Objection made and sustained.]

Tr. vol. 16, pp. 1010–19 (emphasis added).

The jurors were instructed that they could return the following verdicts: guilty of "murder for hire"; guilty of the "lesser included offense" of murder; guilty of the attempted murder of Savage; or not guilty. The jury ultimately acquitted Lincoln on charges that he had hired Kekona to kill Warford and Blue, but convicted him of the "lesser included offense" of their murders. In addition, the jury convicted Lincoln of the attempted murder of Savage.

On September 17, 1982, Lincoln filed a Petition for Writ of Habeas Corpus with this court, which was dismissed. He appealed the decision, and the Ninth Circuit affirmed in part, and reversed and remanded in part. On August 11, 1987, this Court heard argument on the first of the numerous issues on remand: whether the prosecutor's remarks regarding Lincoln's failure to take the stand prejudiced Lincoln, or whether they constituted harmless error?

The Ninth Circuit has already decided that the four comments by the prosecutor were improper and has remanded on this issue for the sole purpose of determining "in the first instance, whether the improper conduct, which was followed by curative instructions, prejudiced Lincoln, or whether, in the context of the lengthy proceedings in this case, it constituted harmless error." *Lincoln v. Sunn,* 807 F.2d 805, 810–11 (9th Cir.1987). Although the Court did not say so, harmless error must be proved beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ The Ninth Circuit provided the following standard for determining whether the comments were prejudicial or harmless:

Prosecutorial comment on the defendant's failure to testify mandates reversal "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal." *United States v. Kennedy,* 714 F.2d 968, 976 (9th Cir.1983).... Improper conduct warrants reversal only if it appears that the comment may possibly have affected the verdict. *United States v. Pruitt,* 719 F.2d 975, 978 (9th Cir.1983)....

Conversely, courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions. *[United States v.] Soulard,* 730 F.2d [1292,] 1307 [9th Cir.1984].

*Lincoln,* 807 F.2d at 809.

From this language, four factors for consideration can be gleaned: 1) whether the comment was extensive or isolated; 2) whether an inference of guilt from silence is stressed as a basis for conviction; 3) whether evidence of record could have supported an acquittal; and 4) whether curative instructions were given. *See Anderson v. Nelson,* 390 U.S. 523, 523–24, 88 S.Ct. 1133, 1134–35, 20 L.Ed.2d 81 (1968); *United States v. Kennedy,* 714 F.2d 968, 976 (9th Cir.1983).

■ As to whether the comment was extensive or isolated, the prosecutor commented on Lincoln's silence twice without objection from defense counsel. Following a third improper comment, defense counsel objected, and the objection was sustained. But, the prosecutor persisted and commented again for the fourth time, and another objection was sustained. This is not a case of a single improper comment, rather the prosecutor persisted in impressing upon the jury that Lincoln had failed to testify, even after the prosecutor had been put on notice by the court that such conduct was impermissible. Thus, the prosecutor's improper comments were extensive, rather than isolated.

As to the second factor, whether an inference of guilt from silence is stressed as a basis for conviction, the prosecutor repeatedly emphasized that only Kekona and Lincoln could testify about their relationship and the substance of their communications. The comments clearly suggested that silence was evidence of guilt.

As to the third factor, whether evidence of record could have supported an acquit-

tal, most of the evidence presented at the trial concerned Kekona and Hawkins and did not implicate Lincoln. Furthermore, there was evidence that the murders were committed in the process of an attempted robbery rather than a planned hit. Additionally, the prosecutor's case relied substantially on the testimony of Kekona, and there was considerable evidence challenging his credibility. The lengthy deliberation undertaken by the jury suggests that all or some of these events of the trial supported an acquittal in the minds of some jurors.

As to the final factor, whether curative instructions were given, the trial judge did twice explain to the jury that no inference should be drawn from the defendant's failure to testify. The first occasion was actually in response to *defense* counsel's comment that he had advised Lincoln not to testify for "various technical and other reasons...." The second instruction was buried in the set of jury instructions given at the conclusion of the evidence. Thus, while some curative instructions were given, they could have been more timely. *Cf. United States v. Hendershot,* 614 F.2d 648 (9th Cir.1980) (harmless error found where improper comment was promptly followed by curative instructions).

Having considered each of the relevant factors, I cannot say that the prosecutor's improper comments were harmless error beyond a reasonable doubt. Therefore,

IT IS HEREBY ORDERED that unless the State of Hawaii affords the Petitioner, John K. Lincoln, a new trial within 120 days from the date of this Decision and Order, a writ of habeas corpus shall issue, directing the respondents to release from custody the body of the Petitioner.